# THE LAW OFFICES OF SEAN M. MAHER, PLLC

March 11, 2022

**VIA Email (unredacted) and ECF (with redactions)**

Hon. Philip M. Halpern
United States District Judge
United States Courthouse
300 Quarropas Street
White Plains, New York 10601

    Re:   *United States v. Jamaul Aziz*, 21 Cr. 113 (PMH)
            Defense letter motion for bond

Dear Judge Halpern:

    In light of changed circumstances, Mr. Aziz respectfully moves the Court for release on bond.[1] When Mr. Aziz was detained last year after significant bail-related litigation, Mr. Aziz was an active attentive father of his children, including his 6-year-old son, ▇▇▇▇▇▇ who is autistic and has special needs. At the end of December 2021, ▇▇▇ mother, ▇▇▇▇▇▇ accepted an employment contract to work in West Africa for 12 months. Because Mr. Aziz is detained, ▇▇▇ arranged for her mother, ▇▇▇▇▇▇ to care for ▇▇▇ while ▇▇▇ works abroad for the next year. Unfortunately, ▇▇▇ has serious health issues and is struggling to provide ▇▇▇ the care and support he needs, placing ▇▇▇ in a precarious position with his education, development, and welfare. ▇▇▇ is in a very difficult situation that can be ameliorated by releasing Mr. Aziz on bond so that Mr. Aziz can protect his son from any further negative repercussions resulting from ▇▇▇ absence over the next nine months.

1. **Procedural History**

    Mr. Aziz currently is detained and charged in a three-count indictment with conspiracy to distribute narcotics, possession of a firearm in furtherance of a drug trafficking offense, and felon in possession of a firearm.

---

[1] Accompanying this letter motion are Exhibits 1-8, which include declarations of undersigned counsel (Exhibit 1) and of ▇▇▇▇▇▇ (Exhibit 2). Some personal identifying and sensitive information has been redacted from the publicly-filed documents and it is requested that the unredacted excerpts be filed under seal.

2796 SEDGWICK AVENUE, SUITE C1, BRONX, NEW YORK 10468
(212) 661-5333 • (347) 548-9959 FAX
WWW.SEANMAHERLAW.COM

Mr. Aziz was arrested on a criminal complaint and presented on January 8, 2021.[2] After a detention hearing on the same day, Magistrate Judge Davison remanded Mr. Aziz based upon risk of flight and dangerousness to the community.[3]

A second bond hearing was held on January 25, 2021 before Magistrate Judge Davison. At the close of the hearing, the Court granted bail on the condition that a $300,000 bond be cosigned by 5 financially responsible persons and that the bond be secured by $250,000 in property.[4] The Court ordered that Mr. Aziz remain detained until the bail conditions were met.[5]

On January 29, 2021, Mr. Aziz satisfied the conditions of his bail and was released from pretrial detention.[6]

On February 22, 2021, the instant three-count indictment was filed against Mr. Aziz and co-defendant Sabrina Keitt.[7]

On February 26, 2021, Mr. Aziz was arraigned on the indictment before Magistrate Judge Davison. At the same proceeding, the government moved to re-open the bail hearing, arguing that Mr. Aziz had made harassing phone calls to the mother of co-defendant Keitt. The Court immediately re-opened the bail hearing and, after argument from both sides, ordered Mr. Aziz to be remanded with direction to surrender to the U.S. Marshals by March 1, 2021.[8] Mr. Aziz immediately filed a motion for reconsideration,[9] which the government opposed,[10] generating a reply from Mr. Aziz.[11]

Two days after Mr. Aziz's timely surrender, on March 3, 2021 Mr. Aziz filed a motion with this Court to revoke the detention order of the Magistrate Judge.[12] This Court granted Mr. Aziz's motion for a bail review hearing and scheduled the

---

[2] Complaint, Doc. No. 1 (Jan. 8, 2021).
[3] Minute Entry, Doc. No. 2 (Jan. 8, 2021); Bail Hr'g Tr., Doc. No. 16 (Jan. 8, 2021) (filed March 8, 2021), attached as Exhibit 6.
[4] Bail Hr'g Tr. at 24 (Jan. 25, 2021), attached as Exhibit 7.
[5] *Id.* at 28; Minute Entry (Jan. 25, 2021); Personal Recognizance Bond, Doc. No. 62 (Jan. 25, 2021).
[6] *See* Mot. for Recon., Doc. No. 22 n.3 (March 15, 2021).
[7] Indictment, Doc. No. 9 (Feb. 22, 2021).
[8] Bail Hr'g Tr. at 27 (Feb. 26, 2021), attached as Exhibit 8; Minute Entry (Feb. 26, 2021).
[9] Mot. for Recon. with Exhibits A-C, Doc. Nos. 22, 22-1, 22-2, 22-3 (Feb. 26, 2021) (docketed March 15, 2021).
[10] Gov't. Resp. with Exhibits A-C, Doc. Nos. 25, 25-1, 25-2, 25-3 (Feb. 28, 2021) (docketed March 16, 2021).
[11] Reply to Resp., Doc. No. 23 (March 1, 2021) (docketed March 15, 2021).
[12] Letter Mot., Doc. No. 17 (March 3, 2021) (docketed March 9, 2021).

hearing for March 22, 2021.[13] In the interim, Mr. Aziz filed additional papers in support of being released on bail,[14] which the government opposed.[15]

The Court adjourned the scheduled March 22, 2021 bail review hearing until April 12, 2021.[16] That hearing did not occur on April 12, 2021 because Mr. Aziz requested the appointment of new counsel, which was granted on April 12, 2021.[17] Another proceeding resulting in a change of defense counsel occurred on April 21, 2021.[18]

On May 14, 2021, Mr. Aziz filed a motion requesting a *de novo* review of the Magistrate Court's detention order.[19] This Court granted the application and ordered a bail review hearing to occur on May 26, 2021.[20] The government opposed Mr. Aziz's release.[21]

Upon the motion of defense counsel,[22] this Court adjourned the *de novo* bail review hearing *sine die*.[23] Ten days later, Mr. Aziz moved again for the *de novo* bail review hearing,[24] which the Court granted and scheduled for July 20, 2021.[25]

On July 20, 2021, this Court held a *de novo* bail review hearing and found that the government "established by clear and convincing evidence that there are no conditions that will assure the safety of community and by a preponderance of the evidence that no conditions or combination of conditions will assure [Mr. Aziz's]

---

[13] Memo Endorsement, Doc. No. 18 (March 10, 2021).
[14] Letter Mot. with Exhibits A-E, Doc. Nos. 24, 24-1, 24-2, 24-3, 24-4, 24-5 (March 15, 2021); Letter Mot. re: Compel Discovery for Bail Hr'g, Doc. No. 30 (March 22, 2021).
[15] Gov't. Letter Resp. with Exhibits A-H, Doc. Nos. 21, 21-1, 21-2, 21-3, 21-4, 21-5, 21-6, 21-7, 21-7, 21-8 (March 15, 2021); Gov't. Letter Resp. with Exhibits A-I, Doc. Nos. 32, 32-1, 32-2, 32-3, 32-4, 32-5, 32-6, 32-7, 32-8, 32-9 (March 25, 2021).
[16] *See* Memo to Docket Clerk (March 22, 2021); Set/Reset Hr'g Notice (March 22, 2021); Order, Doc. No. 34 (March 30, 3021).
[17] Minute Entry (April 12, 2021).
[18] Minute Entry, Doc. No. 42 (April 21, 2021).
[19] Letter Mot., Doc. No. 50 (May 14, 2021).
[20] Memo Endorsement, Doc. No. 51 (May 14, 2021).
[21] Gov't. Letter Resp. with Exhibits A-I, Doc. Nos. 57, 57-1, 57-2, 57-3, 57-4, 57-5, 57-6, 57-7, 57-8, 57-9 (June 7, 2021).
[22] Letter Motion, Doc. No. 58 (June 11, 2021).
[23] Memo Endorsement, Doc. No. 59 (June 11, 2021).
[24] Letter Motion, Doc. No. 60 (June 21, 2021).
[25] Order, Doc. No. 61 (June 21, 2021).

appearance."[26] The Court remanded Mr. Aziz on the grounds of risk of flight and dangerousness to the community."[27]

Thus, except for the time period of January 29 through March 1, 2021, Mr. Aziz has remained in pretrial detention since January 8, 2021.

Due to changed circumstances that are described more fully below, Mr. Aziz again seeks bond.

2. **There are changed circumstances since Mr. Aziz was detained last year.**

Mr. Aziz's 6-year-old son, ▮▮▮ is autistic and receives significant social services support. ▮▮▮ school prepared an Individualized Education Program (IEP) for ▮▮▮ that outlines attainable goals for him to reach. He receives specialized instruction and educational support. ▮▮▮ academic, social, and physical challenges are set forth in detail in his IEP, which is attached as Exhibit 3.

In late 2021, ▮▮▮ mother, ▮▮▮ received a one-year contract to work as a Restaurant Manager for a large corporate entity located in Accra, Ghana.[28] With Mr. Aziz detained, ▮▮▮ arranged for her mother, ▮▮▮ to take care of ▮▮▮ for 12 months.[29] In December 2021, ▮▮▮ moved from out of state into the family household in New York to begin caring for ▮▮▮[30] For just over the last two months, ▮▮▮ has been ▮▮▮ primary caretaker.[31]

▮▮▮ grandmother is doing the best she can, but there are significant issues with this arrangement. ▮▮▮ 64, suffers from Multiple Sclerosis (MS) and is a breast cancer survivor.[32] With MS, ▮▮▮ fatigues easily and has problems with mobility.[33] Stress exacerbates her MS and makes things even more difficult for her.[34] Today, she is cancer-free, but she has ongoing issues resulting from her chemotherapy.[35] She has severe night sweats that affect her sleeping and she

---

[26] Minute Entry (July 20, 2021). The transcript of the July 20, 2021 *de novo* bail review hearing is not on the case docket. A defense request for the transcript is pending.
[27] *Id.*
[28] Employment Agreement, attached as Exhibit 4; Declaration of ▮▮▮ ¶ 3, attached as Exhibit 2.
[29] Exhibit 2 ¶ 4.
[30] *Id.* ¶ 2.
[31] *Id.*
[32] *Id.* ¶ 6.
[33] *Id.*
[34] *Id.*
[35] *Id.*

cannot take normal hormonal treatments because of her cancer history.[36]

On top of caring for ▮▮▮▮, ▮▮▮▮ has ongoing medical appointments that she must attend to for her MS and cancer history.[37] On average, she has two appointments per month with her specialists in neurology, oncology, gynecology, and gastroenterology, as well as her primary care physician.[38] ▮▮▮▮ also is coordinating medical care for her ailing husband, who has developed a blood and bone infection in Washington, D.C. where he is in a nursing home rehabilitation center.[39] ▮▮▮▮ can't drive to Washington, D.C. to see her husband in person; her current stress levels have exacerbated her MS so badly that she is not able to use her legs for driving.[40]

Caring for ▮▮▮▮ is a physically taxing and non-stop endeavor.[41] ▮▮▮▮ is attending school via video sessions at home.[42] ▮▮▮▮ needs to monitor ▮▮▮▮ during his school sessions to make sure he actually engages with his teachers.[43] When ▮▮▮▮ is not in a school video session, ▮▮▮▮ needs to make sure he is engaged with any therapists that may be in the home.[44] She needs to make sure ▮▮▮▮ is implementing the behavioral techniques that he is taught by his therapists when the therapists are not in the home with him.[45] She also needs to be on constant alert all day and night to make sure ▮▮▮▮ is safe.[46]

▮▮▮▮ has school video classes on Mondays, Thursdays, and Fridays for speech.[47] On Wednesdays, Thursdays, and Fridays, an Applied Behavioral Analysis (ABA) specialist comes to the home for 3 hours from 9 a.m. to 12 p.m.[48] On Mondays and Tuesdays, ▮▮▮▮ does school work with ▮▮▮▮ that the ABA specialist leaves for ▮▮▮▮ to complete.[49] ▮▮▮▮ does regular school homework with ▮▮▮▮ on Wednesdays, Thursdays, and Fridays for roughly two hours per day, not including breaks that they need to take.[50]

---

[36] *Id.*
[37] *Id.* ¶ 7.
[38] *Id.*
[39] *Id.* ¶ 8.
[40] *Id.*
[41] *Id.* ¶ 9.
[42] *Id.*
[43] *Id.*
[44] *Id.*
[45] *Id.*
[46] *Id.*
[47] *Id.* ¶ 10.
[48] *Id.*
[49] *Id.*
[50] *Id.*

▮ is having great difficulty keeping ▮ on track with his daily online school participation and assignments.[51] ▮ appears to be falling behind academically. Additionally, his behavior is deteriorating without the steady persistent guidance of his mother and father.[52] There is a justified concern that ▮ will continue to fall behind academically and behaviorally if the current arrangement persists for 9 more months.

Before his detention, Mr. Aziz was the primary daily caregiver for ▮.[53] Mr. Aziz steadfastly attended to ▮ to make sure he was fully engaged with his academic and therapeutic programming. All of the hard-won progress that ▮ has achieved over the last few years potentially lies in the balance and, if nothing is changed while ▮ is away for the next 9 months, the negative impact on ▮ could be profound.

Mr. Aziz needs to be able to help care for his son during this difficult period while ▮ is out of the country. Should the Court approve of Mr. Aziz being released on bail, Mr. Aziz would be able to shoulder the caretaking for ▮ that is proving to be too stressful and challenging for ▮ grandmother, thus providing a more stable environment for his son and a healthier less-stressful situation for ▮.

**3.   The Bail Reform Act permits Mr. Aziz's release.**

**A.   The legal standard for granting bail**

Although the Court previously ordered that Mr. Aziz be detained, the Court is permitted to reopen the detention hearing when there is a material change of circumstances. Specifically, 18 U.S.C. § 3142(f) states that "[t]he hearing may be reopened, before or after a determination by the judicial officer, at any time before trial if the judicial officer finds that information exists that was not known to the movant at the time of the hearing and that has a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person and the community."

The Bail Reform Act requires the release of a defendant on the "least restrictive" conditions necessary to "reasonably assure the appearance of the person as required and the safety of any other person and the community."[54] "The judicial officer shall order the pretrial release of the person on personal recognizance, or upon the execution of an unsecured appearance bond in an amount

---

[51] *Id.* ¶ 11.
[52] *Id.*
[53] *Id.* ¶ 13.
[54] 18 U.S.C. § 3142(c)(1)(B).

specified by the court . . . unless the judicial officer determines that such release will not reasonably assure the appearance of the person as required or will endanger the safety of any other person or the community."[55] Both the Bail Reform Act and case law make clear that "it is only a limited group of offenders who should be denied bail pending trial."[56]

As was the circumstance in the previous detention hearings, a rebuttable presumption arises in this case due to the charges. The § 3142(e) presumption places on Mr. Aziz only the burden of coming forward with evidence to rebut it, i.e., a burden of production; the government retains the burden of persuasion that detention is warranted after consideration of the factors listed in § 3142(g).[57]

The government must prove by clear and convincing evidence that Mr. Aziz poses a danger.[58] If the government is able to satisfy that burden, the government must also demonstrate that "no condition or combination of conditions" will alleviate the risk.[59]

The decision to release Mr. Aziz on bail turns primarily on four factors: (1) the nature and circumstances of the crime charged; (2) the strength of the evidence; (3) the background of the defendant, including "character, physical and mental condition, family [and community] ties, employment, financial resources" and other aspects of the defendant's personal history; and (4) the level of danger to others that the defendant's release would pose.[60]

**B.    The changed circumstances surrounding ▮▮▮ welfare warrants granting bail.**

The recent change of ▮▮▮ living conditions in the absence of his mother is a significant change of circumstance warranting judicial action. The § 3152(g) factors also support Mr. Aziz's release at this point.

**(1)    *The nature and circumstances of the offense and the strength of the evidence do not justify detention.***

---

[55] 18 U.S.C. § 3142(b).
[56] *United States v. Sabhnani*, 493 F.3d 63, 75 (2d Cir. 2007) (quoting *United States v. Shakur*, 817 F.2d 189, 195 (2d Cir. 1987) (internal quotations and citation omitted)).
[57] *United States v. Martir*, 782 F.2d 1141, 1146 (2d Cir. 1986).
[58] *See* 18 U.S.C. §§ 3142(e), 3142(f); *see also United States v. Chimurenga*, 760 F.2d 400, 405 (2d Cir. 1985).
[59] *See* 18 U.S.C. §§ 3142(e), 3142(f); *see also Sabhnani*, 493 F.3d at 75 (citing *Chimurenga*, 760 F.2d at 405).
[60] 18 U.S.C. § 3152(g); *see Sabhnani*, 493 F.3d at 75; *United States v. Orena*, 986 F.2d 628, 632 (2d Cir. 1993).

While the defense is still reviewing and analyzing the discovery provided by the government to date, it is apparent that the government's case is not as strong as it previously suggested.

The most solid evidence the government has are four recorded interactions involving a confidential informant ("CI"). The government has asserted that these four recorded interactions correspond to four drug sales allegedly made by Mr. Aziz. The recordings do not bear that out.

First, these are only audio recordings. There are no video recordings of any purported drug transaction in this case. Second, in two of the recordings, there is no male voice involved in either of the purported drug transactions. These recordings appear to reflect discussions of the female CI with another female. Third, in the other two recordings, a male voice can be heard, however it is not certain by any stretch that Mr. Aziz is involved in any drug transaction with the CI.

The paucity of physical evidence, such as recorded video and audio evidence, linking Mr. Aziz to the charged crimes apparently will be supplemented by witness testimony to the effect that Mr. Aziz was known to sell drugs and, on at least one occasion, held a gun while telling someone to stay away from "his" drug territory. There has been no evidence provided to substantiate these allegations and the names of any witnesses to these alleged events have not been provided to the defense.

As to the drugs actually recovered by the government, the total amount of fentanyl derived from the four transactions involving the CI is set forth in the following table:

| Date of alleged drug transaction | Substance identified | Net weight | Substance purity | Amount of pure substance |
|---|---|---|---|---|
| 10/29/2020 | Fentanyl | 9.360g +- 0.002g | 8% +- 2% | 0.748g +- 0.146g |
| 11/9/2020 | Fentanyl | 10.112g +- 0.002g | 4.3% +- 0.9% | 0.434g +- 0.092g |
| 11/19/2020 | Fentanyl | 19.352g +- 0.002g | 5% +- 1% | 0.967g +- 0.199g |
| 12/10/2021 | Fentanyl | 31.687g +- 0.002g | 6% +- 1% | 1.901g +- 0.387g |
| | | | | |
| **TOTAL** | | 70.511g +- 0.008g | | 4.05g +- 0.824g |

As shown in the table above, the amount of actual fentanyl purportedly recovered from the four transactions is about 4 grams. Under the U.S. Sentencing Guidelines, the 4 grams would be inflated to about 70 grams under the theory that these were mixtures containing a detectable amount of fentanyl. There is still a substantial distinction between 70 grams of pure fentanyl as opposed to 70 grams of a mixture that contains in total about 4 grams of fentanyl.

The government has asserted that about 22 grams of an additional mixture of substances containing fluorofentanyl was seized from Mr. Aziz's person upon his arrest while driving on a New York State highway. The defense anticipates moving to suppress the 22-gram mixture as the fruit of an illegal arrest, search, and seizure.

As far as the two firearms counts in the indictment, the government never recovered any firearm from Mr. Aziz's person or property.

The government has alleged that Mr. Aziz was involved in conspiring to distribute crack cocaine, however no crack cocaine was ever recovered from Mr. Aziz's person or property. In fact, it appears that no crack cocaine at all was ever seized by the government.

In sum, the nature and circumstances of the offense at most amount to a low-level state drug offense and the drug weight is shockingly light for a federal prosecution of a lead defendant.

**(2)** *Mr. Aziz's background weighs in favor of his release.*

Mr. Aziz's prior pleadings and oral arguments in the previous bail hearings provide a fulsome record of Mr. Aziz's positive background and attributes and are incorporated by reference.[61] Of particular note is the enumeration of Mr. Aziz's history and characteristics in his previously filed bond equities letter, which is attached as Exhibit 5.[62]

To synopsize, Mr. Aziz is a life-long New Yorker. His father is a retired United States Navy serviceman and former city sanitation worker. His sister works for the New York City Police Department. He has been an active father for his seven children.

Mr. Aziz has worked in the music industry and been self-employed. When not employed, Mr. Aziz has spent his time caring for his children, including handling the added responsibilities that come with raising his two autistic children, ▓▓▓▓ and ▓▓▓▓

As demonstrated in Mr. Aziz's prior filings and bail hearing arguments, Mr. Aziz has strong personal equities favoring his release.

**(3)** *Mr. Aziz will not pose a danger to others if released.*

A big question before the Court is what to make of what happened that led to Mr. Aziz's bail being revoked in the first place. On February 26, 2021, the Court revoked Mr. Aziz's bail and ordered detention based upon the government's proffer that Mr. Aziz made harassing phone calls to co-defendant Keitt's mother. The

---

[61] *See supra* notes 3, 4, 6, 8, 9, 11, 12, 14, 19, 22, 24, 26.
[62] Letter Mot. at 4-7, Doc. No. 24 (March 15, 2021), attached as Exhibit 5.

defense pointed out why reliance on the government's proffer was problematic,[63] however the Court found that the balance of the equities shifted towards detention.

What do we know now a year after Mr. Aziz's bail was revoked? There have been no attempts whatsoever by Mr. Aziz to contact co-defendant Keitt or Keitt's mother. There have been no allegations whatsoever that Mr. Aziz has tried to threaten, harass, obstruct, or unduly influence anyone. That Mr. Aziz is detained is not of tremendous import. There are many ways that people who are detained can reach beyond the jail walls to harass others, particularly in this age of cell phones and ubiquitous means of electronic communication. Yet not once has Mr. Aziz tried to do any such thing over the last year.

Mr. Aziz denied that he ever made any harassing calls to Keitt's mother and asserted that the evidence showed that Keitt's mother exaggerated. Even assuming, *arguendo*, that Mr. Aziz made a phone call asking Keitt's mother to remind Keitt of "the code," surely a year of jail in the middle of a pandemic has been more than sufficient to reinforce how serious the Court and our society are that such a phone call should not be made. This is particularly true when the words on their face did not express any threat of physical harm and no express threats were ever alleged to have been made by Mr. Aziz.

Aside from the issue with the phone calls, Mr. Aziz was doing well on pretrial release. He was complying with his terms of supervision and was reporting as directed. Likewise, when he previously was on parole in New York State, Mr. Aziz did not violate the law and complied with the terms of his parole.

### 4.    The proposed conditions of Mr. Aziz's release

Mr. Aziz requests the Court to release him on bond pursuant to 18 U.S.C. § 3142. Mr. Aziz's bail proposal is that the Court release him on a $300,000 personal appearance bond secured by $250,000 in real property and the signatures of five financially responsible adults. In addition to the standard conditions of pretrial release, the Court also should impose conditions of home confinement and location monitoring

---

[63] *Id.* at 7-11; Mot. for Recon. with Exhibits A-C, Doc. Nos. 22, 22-1, 22-2, 22-3 (Feb. 26, 2021) (docketed March 15, 2021); Reply to Resp., Doc. No. 23 (March 1, 2021) (docketed March 15, 2021); Exhibit 8 at 16, 25-26.

## Conclusion

Accordingly, for the above-stated reasons, the defense respectfully requests that bail be set for Mr. Aziz with the conditions outlined above; in the alternative, the defense requests that a bail hearing be scheduled.

Respectfully submitted,

_____/S/_____
Sean M. Maher
*Counsel for Jamaul Aziz*

cc: All counsel via ECF