UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------X

UNITED STATES OF AMERICA,

    -against-

JAMAUL AZIZ,
       a/k/a "Bugz,"

          Defendant.

---------------------------------------------------X

S2 21-Cr-113 (PMH)

Hon. Philip M. Halpern, U.S.D.J.

# MEMORANDUM OF LAW

STEPHENS, BARONI, REILLY & LEWIS, LLP
By: Stephen R. Lewis, Esq.
*Attorney for Defendant Jamaul Aziz*
175 Main Street, Suite 800
White Plains, New York 10601
914-683-5185
slewis@sbrllaw.com

# Table of Contents

                                                                                                              Page

Table of Authorities………………………………………………………… ii

Preliminary Statement……………………………………………………… 1

Discussion of Facts………………………………………………………… 2

Argument…………………………………………………………………… 4

      a. Constitutional Protections………………………………………….. 4

      b. Burden of Proof……………………………………………………. 5

Discussion………………………………………………………………….. 7

      a. The Pretext Stop…………………………………………………… 7

      b. Warrantless Search and Seizure…………………………………… 8

      c. Statements Made During Custodial Interrogation………………….. 12

Conclusion…………………………………………………………………. 13

# Table of Authorities

|  | Page |
|---|---|
| **Cases** | |
| *Berkemer v. McCarty*,<br>468 U.S. 420 (1984) | 12 |
| *California v. Beheler*,<br>463 U.S. 1121 (1983) | 12 |
| *California v. Hodari D.*,<br>499 U.S. 621 (1991) | 4 |
| *Colorado v. Connelly*,<br>479 U.S. 157 (1986) | 5, 6 |
| *Delaware v. Prouse*,<br>440 U.S. 648 (1979) | 8 |
| *Dickerson v. United States*,<br>530 U.S. 428 (2000) | 12 |
| *Edwards v. Arizona*,<br>451 U.S.477 (1981) | 5, 6 |
| *Fare v. Michael C.*,<br>442 U.S. 707 (1979) | 13 |
| *Green v. Scully*,<br>850 F.2d 894 (2d Cir. 1988) | 6 |
| *Illinois v. Gates*,<br>462 U.S. 213 (1983) | 5 |
| *Lego v. Twomey*,<br>404 U.S. 477 (1972) | 6 |
| *Mapp v. Ohio*,<br>367 U.S. 643 (1961) | 11 |
| *Matter of Victor M.*,<br>9 N.Y.3d 84 (2007) | 10 |

*Michigan v. Tucker*,
    417 U.S. 433 (1974)……………………………………………… 5

*Mincey v. Arizona*,
    437 U.S. 385 (1978)……………………………………………… 9

*Miranda v. Arizona*,
    384 U.S. 436 (1966)……………………………………………… 5, 6, 12, 13

*Moran v. Burbine*,
    475 U.S. 412 (1986)……………………………………………… 13

*North Carolina v. Butler*,
    441 U.S. 369 (1979)……………………………………………… 6

*Oregon v. Mathiason*,
    429 U.S. 492 (1977)……………………………………………… 12

*Orozco v. Texas*,
    394 U.S. 324 (1969)……………………………………………… 12

*Pennsylvania v. Mimms*,
    434 U.S. 106 (1977)……………………………………………… 8, 9

*People v. Howard*,
    50 N.Y.2d 583 (1980), *cert. denied*, 449 U.S. 1023 (1980)………… 10

*Rogers v. Richmond*,
    365 U.S. 534 (1961)……………………………………………… 12

*Schneckloth v. Bustamonte*,
    412 U.S. 218 (1973)……………………………………………… 6

*Sibron v. New York*,
    392 U.S. 40 (1968)………………………………………………. 10

*Terry v. Ohio*,
    392 U.S. 1 (1968)………………………………………………… 10, 11

*United States v. Brignoni-Ponce*,
    422 U.S. 873 (1975)……………………………………………… 8

*United States v. Capers*,
    627 F.3d 470 (2d Cir. 2010)……………………………………… 6

*United States v. Chisholm*,
    2008 U.S. Dist. LEXIS 106474 at *27-28 (E.D.N.Y. 2008)............ 6

*United States v. Filippi*,
    2013 WL 208919, at *9 (S.D.N.Y. Jan. 16, 2013)..................... 7

*United States v. Ford*,
    232 F.Supp.2d 625 (E.D. Va. 2002)................................. 11

*United States v. Gladden*,
    394 F.Supp.3d 465 (S.D.N.Y. 2019)................................. 8

*United States v. Kiyuyung*,
    171 F.3d 78 (2d Cir. 1999)........................................ 6

*United States v. Martinez-Fuerte*,
    428 U.S. 543, 556 (1976).......................................... 8

*United States v. Mathurin*,
    148 F.3d 68 (2d Cir. 1998)........................................ 7

*United States v. Pena*,
    961 F.2d 333 (2d Cir. 1992)....................................... 5

*United States ex rel. Powell v. Pennsylvania*,
    294 F.Supp. 849 (E.D. Pa 1968).................................... 10

*United States v. Viscioso*,
    711 F.Supp. 740 (S.D.N.Y. 1989)................................... 7

*United States v. Wyche*,
    307 F.Supp.2d 453 (E.D.N.Y. 2004)................................. 6

*Uzoukwu v. City of New York*,
    805 F.3d 409 (2d Cir. 2015)....................................... 10

*Whren v. United States*,
    517 U.S. 806 (1996)............................................... 8

*Wong Sun v. United States*,
    371 U.S. 471 (1963)............................................... 11,12

Statutes

    N.Y. Criminal Procedure Law § 140.50(1)........................................... 10

    N.Y. Penal Law §§ 10.00(1)(2)(6)....................................................... 11

    N.Y. Vehicle and Traffic Law § 155.................................................... 11

Constitutional Provisions

    U.S. Const. amend. IV.......................................................................... 4, 8, 10, 11

    U.S. Const. amend. V........................................................................... 5

    U.S. Const. amend. XIV....................................................................... 5

    N.Y. Const. art. I, § 12......................................................................... 10

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------X

UNITED STATES OF AMERICA,

   -against-

JAMAUL AZIZ                                  S2 21-Cr-113 (PMH)
    a/k/a "Bugz,"

           Defendant.

-------------------------------------------------X

## MEMORANDUM OF LAW

### Preliminary Statement

On January 17, 2021 a car driven by Jamaul Aziz was stopped by New York State Police while driving westbound on State Road 17 in the Town of Mamakating, New York. State Police told him he was stopped for speeding. The defendant denied speeding and complied with the officer's direction to produce his license and registration and to step out of the vehicle. Upon his exiting the vehicle, Mr. Aziz was grabbed by the arm, taken to and bent over the hood of the state police vehicle where his pants were pulled down, his buttocks exposed, and a cavity search was performed. The twenty-three grams of fentanyl analogue which are charged in the pending indictment is the white powder that the police removed from the defendant's anus on the side of Route 17.

When the defendant was taken to police headquarters, he was told he was under arrest. He was told that this was not a simple roadside stop but they had been following his activities, knew where he was coming from; that they know everything because this has been a four month

1

investigation. After he was Mirandized, Aziz told the police "I don't want to speak to you." The police continued asking him questions, soliciting answers which whether true or not are the subject of this suppression motion.

Discussion of Facts

At approximately 9:30 p.m. New York State Police Trooper Corey Ranno pulled over a 2019 red Kia Forte with New Hampshire license plate 4806025. There was one occupant of the vehicle, a forty year old black man named Jamaul Aziz. The car was pulled over while traveling westbound on State Road 17 in the vicinity of Exit 115. According to the defendant, when the troopers approached his vehicle, one of them, on the rear passenger side, had his gun drawn (Declaration "Dec" ¶ 4). Mr. Aziz asked the trooper why they stopped his vehicle, and he was told that he had been speeding which he denied. He was asked for his license and registration and instructed to exit the vehicle. When he questioned why he had to get out of the vehicle, he was again ordered to step out. He complied and was grabbed by his arm, taken to the hood of the troop car, bent over the hood and searched. He recalls being held by at least four other officers who were at the scene. His pants were pulled down, and an officer performed an anal cavity search there in public view on the side of Route 17 (Dec ¶ 7).

Ultimately, he was taken to police headquarters where he was interrogated by police officers Travis Hartman and Chris Williams. That interrogation was recorded, and the recording is attached to this motion as Exhibit A to the Affirmation.

Mr. Aziz had his handcuffs removed and was told to sit on a chair in a small room apparently used for interrogations (TS – 21:38)[1]. He sat there alone for approximately six minutes

---

[1] Reference to the time stamp on the recording provided as Exhibit A attached to the Affirmation is designated by the letters TS followed by the time shown on the video.

until the two officers came into the room. They introduced themselves as "Chris" and "Travis" and told him "this was his chance," that "this isn't your normal car stop, pullover on the highway kind of thing," that the "gig was up," that "they know everything" (TS – 21:45).

They told him he was under arrest but when he asked what he was under arrest for they told him "we will let the FBI come in and tell you that" (TS – 21:46).

They again told him he was under arrest and gave him his Miranda warnings (TS – 21:48). They concluded by stating: "having these rights in mind do you wish to speak to us now" (TS – 21:19). He responded: "I don't want, you said you wanted to speak to me, I don't want to speak to you." They responded: "You can listen, that's fine. You can listen." (TS – 21:49)[2].

They continued with the questioning. They told him they knew that previously that day he traveled from the Bronx to Harlem and drove up State Route 17 through New Jersey to Sullivan County where he was stopped (TS – 21:52). They continued and told him that the twenty grams of white powder taken from him were drugs he was bringing to Sullivan County to sell: "you were bringing something up here to sell" (TS – 22:01). They told him they know he is a drug dealer and was coming to Sullivan County to sell drugs, that "this is not just we are going to pull Bugzy over and try to make up he is a drug dealer" (TS – 22:02).

They asked him his "girl's name," if he knew Sabrina Keitt[3] or Cynthia. They asked him about other individuals they believed were involved in selling drugs. They told him people will ask, "what did he do when you brought up these girls' names and these other dudes he has been seeing up here" (TS – 22:05). They asked if he had been stopped the week before and what his

---

[2] They indicated on the tape that the time the rights were administered was 10:01. The time stamp reflected 21:49 or 9:49 p.m., a difference of approximately twelve minutes.

[3] Sabrina Keitt is the name of his co-defendant in the initial indictment (Document 9).

3

tattoos meant. They told him that he was going to be charged with the twenty grams that was "in his buttocks." Mr. Aziz immediately questioned their right to "dig in my ass by the side of the street" (TS – 22:07). They finally told him despite his repeated requests as to what he was being charged with, that he was going to be charged by the Feds and probably the state with "drug conspiracy" (TS – 22:09). They acknowledged that they had been following him: "we did follow you" (TS – 22:09).

The officers seemed to Aziz to become frustrated and angry (Dec ¶ 17). They asked him what he had on his person, what he had in his butt, where he stayed, etc. It was a custodial interrogation that continued despite the fact he told them he did not want to speak to them. Again, they told him where he was earlier in the day, that he went from the Bronx to Harlem and then drove up to Sullivan County. They showed him photos and persisted in their interrogation.

They told him they were not going to waste the rest of their night with this and that he was going to be processed and sent to jail "because I can't sit and be bullshitted anymore about this" (TS – 22:22). Mr. Aziz accused them of becoming aggravated and frustrated (TS – 22:25). The questioning finally ended with the officer, Travis, saying "I don't get frustrated I'm getting paid" (TS – 22:26).

## Argument

### a. Constitutional Protections

The Fourth Amendment to the United States Constitution protects citizens' "persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. A person is seized either when physical force is applied to the person, or a person submits to law enforcement's assertion of authority. *California v. Hodari D.*, 499 U.S. 621, 626 (1991).

The Fifth Amendment to the United States Constitution establishes that no person "shall be compelled in any criminal case to be a witness against himself . . . ." The Due Process Clause of the Fourteenth Amendment ensures that no person will be deprived of "life, liberty or property without due process of law." These protections are cornerstones of our criminal jurisprudence.

Not only do these fundamental rights exist but our Supreme Court has long ago directed that persons subjected to custodial interrogation by law enforcement must be apprised that they have these basic Constitutional rights of representation and against self-incrimination. *Miranda v. Arizona*, 384 U.S. 436 (1966). The prophylactic *Miranda* warnings therefore are "not themselves rights protected by the Constitution but [are] instead measures to ensure that the right against compulsory self-incrimination [is] protected." *Michigan v. Tucker*, 417 U.S. 433, 444 (1974); *see Edwards v. Arizona*, 451 U.S.477, 492 (1981) (POWELL, J., concurring). The requirement for *Miranda* warnings before custodial interrogation provides "practical reinforcement" for the Fifth Amendment right. *Michigan v. Tucker, supra* at 444. Even where *Miranda* warnings are properly given, if government agents employ subtle overreaching psychological persuasion that negates the voluntariness of a waiver, it is constitutionally prohibited under the Due Process Clause and suppression is justified. *Colorado v. Connelly*, 479 U.S. 157, 170 (1986).

b. Burden of Proof

The defendant, by his Declaration, challenges the legality of the automobile stop, his arrest, and search. In such a circumstance where there is a contested warrantless arrest, "the burden is on the Government to show that there was probable cause for the arrest." *United States v. Pena*, 961 F.2d 333, 338-339 (2d Cir. 1992). The existence of probable cause requires an examination of the totality of the circumstances. *Illinois v. Gates*, 462 U.S. 213, 238 (1983). In a motion to suppress, once the defendant has established a basis for the motion, the burden then rests upon the

5

government to prove the legality of the police conduct by a preponderance of the evidence. *United States v. Chisholm*, 2008 U.S. Dist. LEXIS 106474 at *27-28 (E.D.N.Y. 2008); *United States v. Wyche*, 307 F.Supp.2d 453, 457 (E.D.N.Y. 2004). Where there is a warrantless search and seizure, the government has the burden of proof to show that an exception to the requirement of a warrant applies. *United States v. Kiyuyung*, 171 F.3d 78, 83 (2d Cir. 1999).

A defendant may waive his right to remain silent in the face of custodial questioning, but such a waiver must be made voluntarily, knowingly and intelligently. *Edwards v. Arizona*, 451 U.S. 479, 482 (1981); *Miranda v. Arizona, supra* at 475. The government has the burden of proving the voluntariness of any statements made by an accused. *Colorado v. Connelly*, 479 U.S. 157, 168-169 (1986).

There exists a presumption against waiver of *Miranda* rights. *North Carolina v. Butler*, 441 U.S. 369, 373 (1979) ["The courts must presume that a defendant did not waive his rights; the prosecution's burden is great; but in at least some cases waiver can be clearly inferred from the actions and words of the person interrogated."] The courts place the burden upon the government to prove that a defendant's confession was voluntary. *Colorado v. Connelly*, 479 U.S. 157, 168 (1986); *United States v. Capers*, 627 F.3d 470, 479 (2d Cir. 2010). Whenever the state bears the burden of proof in a motion to suppress statements that the defendant claims were in violation of *Miranda* and his underlying constitutional rights, the government must prove voluntariness by a preponderance of the evidence. *Lego v. Twomey*, 404 U.S. 477, 489 (1972).

The Court determines the issue of voluntariness by examining the totality of the circumstances. *Schneckloth v. Bustamonte*, 412 U.S. 218, 226 (1973); *Green v. Scully*, 850 F.2d 894, 901 (2d Cir. 1988) ["There are not two rules—standing as twin lighthouses—to guide a reviewing court safely to harbor in determining whether a confession is voluntary. There is only

one guide—the totality of the circumstances rule. No single criterion controls whether an accused's confession is voluntary: whether a confession was obtained by coercion is determined only after a careful evaluation of the totality of the surrounding circumstances."]

"An evidentiary hearing on a motion to suppress ordinarily is required only if 'the moving papers are sufficiently definite, specific, detailed, and nonconjectural to enable the court to conclude that contested issues of fact going to the validity of the search are in question.' " *United States v. Filippi,* 2013 WL 208919, at *9 (S.D.N.Y. Jan. 16, 2013) [*quoting United States v. Pena,* 961 F.2d 333, 339 (2d Cir. 1992)]. The defense may not rely on "bald assertions," and "[w]ithout specification of the factual basis" that support suppression, "the district court is not required to have a hearing." *United States v. Mathurin,* 148 F.3d 68, 69 (2d Cir. 1998); *see also United States v. Viscioso,* 711 F.Supp. 740, 745 (S.D.N.Y. 1989) ["A hearing is not required if the defendant's statements are general, conclusory or based on conjecture."]. A defendant bears the initial burden of establishing, by an affidavit or declaration of someone with personal knowledge of the underlying facts, that there exist disputed issues of material facts. *Id.* at 745.

## Discussion

The defendant, by his Declaration, states that when he asked the trooper why he was stopped, the trooper told him he was speeding, which Mr. Aziz denied (Dec ¶ 5). Later, during his interrogation, he told the two officers he had been stopped "illegally" (TS – 21:46) (Dec ¶ 11).

### a. The Pretext Stop

The totality of the circumstances lend support to the belief that Mr. Aziz's vehicle was stopped as a pretext to search the car and his person as part of a four month long drug investigation. Aziz states he was not speeding and told the police officer that fact immediately upon being approached. The NYS Trooper however told Aziz that he was stopped for speeding and thereafter

7

three traffic simplified traffic informations were filed with the Town of Mamakating Justice Court (see Exhibit B attached to the Affirmation).

When the police effectuate a pretext stop of a motor vehicle and evidence used at trial is recovered, a motion to suppress is appropriate. Failure to bring such a motion may constitute ineffective assistance of counsel. *United States v. Gladden*, 394 F.Supp.3d 465 (S.D.N.Y. 2019). The Fourth Amendment guarantees "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." Temporary detention of individuals during the stop of an automobile by the police, even if only for a brief period and for a limited purpose, constitutes a "seizure" of "persons" within the meaning of this provision. See *Delaware v. Prouse*, 440 U.S. 648, 653 (1979); *United States v. Martinez-Fuerte*, 428 U.S. 543, 556 (1976); *United States v. Brignoni-Ponce*, 422 U.S. 873, 878 (1975). An automobile stop is thus subject to the constitutional imperative that it not be "unreasonable" under the circumstances. As a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred. *See Whren v. United States*, 517 U.S. 806, 809-10 (1996); *Prouse, supra*, at 659; *Pennsylvania v. Mimms*, 434 U.S. 106, 109 (1977) *(per curiam)*.

This factual issue concerning the propriety of the stop in the first instance supports the request for an evidentiary hearing. But even if this Court were to find there was a justified basis for the stop, the search and seizure of Mr. Aziz must be addressed and should fail legal scrutiny.

<u>b. Warrantless Search and Seizure</u>

It is well settled that a warrantless search is "per se unreasonable under the Fourth Amendment – subject only to a few specifically established and well-delineated exceptions."

*Mincey v. Arizona*, 437 U.S. 385, 390 (1978) *quoting Katz v. United States*, 389 U.S. 347, 357 (1967).

Mr. Aziz, by his Declaration, states that he was ordered to step from his car and was then grabbed, bent over the hood of a troop car and searched, inclusive of a cavity search (Dec ¶¶ 7, 8). As the defendant was later told by the officers who questioned him, "this was not your normal car stop, pull over on the highway kind of thing" (TS – 21:45), "not just a regular car stop on the side of the road," this was a "four month long investigation" (TS – 21:49) (Dec ¶¶ 12, 13).

The Supreme Court has ruled that a brief detention of a motorist stopped for a traffic violation or an order to step from the vehicle can be a *de minimus* intrusion, a minor inconvenience, when measured against an officer's legitimate concerns for safety:

> Against this important interest we are asked to weigh the intrusion into the driver's personal liberty occasioned not by the initial stop of the vehicle, which was admittedly justified, but by the order to get out of the car. We think this additional intrusion can only be described as *de minimis*. The driver is being asked to expose to view very little more of his person that is already exposed. The police have already lawfully decided that the driver shall be briefly detained; the only question is whether he shall spend that period sitting in the driver's seat of his car or standing alongside it. Not only is the insistence of the police on the latter choice not a "serious intrusion upon the sanctity of the person," but it hardly rises to the level of a "petty indignity." What is at most a mere inconvenience cannot prevail when balanced against legitimate concerns for the officer's safety. [internal citation omitted]

*Pennsylvania v. Mimms*, 434 U.S. 106, 111 (1977).

The circumstances described by Mr. Aziz amount to more than a minor intrusion but a full physical seizure and search of his person which escalated to a "serious intrusion upon the sanctity of the person." *Id.*

NYS Criminal Procedure Law § 140.50(1) authorizes a police officer to:

> stop a person in a public place located within the geographical area of such officer's employment when he reasonably suspects that such person is committing, has committed or is about to commit either (a) *a felony* or (b) *a misdemeanor* defined in the penal law, and may demand of him his name, address and an explanation of his conduct. [emphasis added]

This legislative authorization specifically applies only to criminal conduct, *i.e.*, felonies, or misdemeanors, and not violations. *See, Matter of Victor M.*, 9 N.Y.3d 84, 88 (2007) (Court reversed Appellate Division and granted suppression motion where temporary detention of juvenile was predicated upon violations rather than a misdemeanor or felony).

The Fourth Amendment and the New York State Constitutional counterpart (New York State Constitution, Art. I, § 12) protects citizens from detention amounting to seizure absent probable cause. *People v. Howard*, 50 N.Y.2d 583, 590 (1980), *cert. denied*, 449 U.S. 1023 (1980) (a police officer may not pursue, absent probable cause to believe the individual has committed, is committing or is about to commit a crime even though he runs away). This right to be let alone has been recognized by our Federal Courts. "[I]n New York, '[a]n individual to whom a police officer addresses a question has a constitutional right not to respond. He may remain silent or walk or run away. . . .' " *Uzoukwu v. City of New York*, 805 F.3d 409, 415-416 (2d Cir. 2015); *but see, United States ex rel. Powell v. Pennsylvania*, 294 F.Supp. 849 (E.D. Pa 1968). "There is no constitutional right to flee justice."

The question in this Court is not whether the police conduct was permissible or impermissible under state law, but whether the police conduct "trenches upon Fourth Amendment rights." *Sibron v. New York*, 392 U.S. 40, 60-61 (1968). In *Terry v. Ohio*, 392 U.S. 1 (1968), the

Supreme Court ruled that a person is seized "when [an] officer, by means of physical force or show of authority, . . . in some way restrain[s] the liberty of a citizen." *Id.* at 19 n16.

The NYSP Trooper later filed three traffic infractions against Mr. Aziz in the local court (see Exhibit B attached to the Affirmation). A traffic infraction is an offense under the penal law of the State of New York but is not a crime. NYS Penal Law §§ 10.00(1)(2)(6); NYS Vehicle and Traffic Law § 155 [A traffic infraction is not a crime]. The physical seizure of Mr. Aziz and his invasive cavity search on the side of the road was illegal and unjustified.

The government is tasked with the responsibility of justifying the warrantless seizure of Mr. Aziz. If the government fails to meet its burden, evidence as a result of the unlawful seizure must be suppressed. See *Mapp v. Ohio*, 367 U.S. 643, 655 (1961); *Wong Sun v. United States*, 371 U.S. 471 (1963). Evidence recovered from his car and his person should be suppressed.

In *United States v. Ford*, 232 F.Supp.2d 625 (E.D. Va. 2002) the court suppressed under similar circumstances. There the court found the arrest lawful but the search unreasonable. After a valid traffic stop and an arrest supported by probable cause, the police officer conducted a search of the defendant's buttocks on the side of the highway. The court found that the police actions were unreasonable under Fourth Amendment scrutiny and suppressed all physical evidence seized from the defendant. *Id.* 631.

Accordingly, the physical evidence seized from Mr. Aziz and his automobile should be suppressed.

In the event the Court declines to summarily grant the defendant's motion as there are crucial factual disputes, an evidentiary hearing should be ordered. The defendant also requests the opportunity to submit additional legal briefing regarding all relevant issues developed during such a hearing.

### c. Statements Made During Custodial Interrogation

In *Miranda v. Arizona,* 384 U.S. 436 (1966), the Supreme Court held that warnings are required when a person being questioned by authorities is "in custody at the station or otherwise deprived of his freedom of action in any significant way." *Orozco v. Texas*, 394 U.S. 324, 327 (1969) *quoting Miranda* at p. 477. Custodial interrogation can be found to occur even in the familiar venue of a person's own bedroom. *Orozco v. Texas*, at 327. Once a constitutional infirmity is established, the statements and the derivative fruits of the improperly obtained statements must also be suppressed. *Wong Sun v. U.S.,* 371 U.S. 471 (1963). For the *Miranda* admonitions to apply, a defendant must be subject to "custodial interrogation." Custody does not require a formal arrest but can be satisfied by some restraint of freedom of movement. *California v. Beheler*, 463 U.S. 1121, 1124 (1983); *Oregon v. Mathiason*, 429 U.S. 492, 495 (1977). The inquiry is an objective one founded upon the perspective of a reasonable person in the defendant's position. *Berkemer v. McCarty*, 468 U.S. 420, 442 (1984). The principle of *Miranda* still governs the admissibility of statements made during custodial interrogation both in state and federal courts. *Dickerson v. United States*, 530 U.S. 428 (2000).

Here there is no question as to custodial interrogation. The defendant was shackled and told he was under arrest. When he was given his *Miranda* rights, he told the officers he did not wish to speak to them (Dec ¶ 14) (TS – 21:49). Despite that assertion of his right not to answer questions to avoid self-incrimination, police questioning continued, and the statements made by Mr. Aziz, whether true or untrue, should be suppressed and their use precluded. When evaluating whether law enforcement officials engaged in conduct intended to circumvent the defendant's right to remain silent and his will to resist, the issue of the defendant's truthfulness is of no bearing. *Rogers v. Richmond*, 365 U.S. 534, 544 (1961).

In *Miranda, supra.* 473-474, the Court stated: "[i]f the individual indicates in any manner, at any time prior to or during questioning, that he wishes to remain silent . . . the interrogation must cease." To establish a voluntary waiver the government must demonstrate that the totality of the circumstances support an "uncoerced choice" to waive *Miranda*, and in this case, rescind his assertion of the right to remain silent: "I don't want to speak to you" (TS – 21:49). *Moran v. Burbine*, 475 U.S. 412, 421 (1986); *Fare v. Michael C.*, 442 U.S. 707, 725 (1979). Despite Mr. Aziz's declaration after being advised of his *Miranda* warnings that he did not want to speak to them, the police used deception to cajole the defendant to answer questions. They told him that he could just "listen" but they continued asking him questions. Statements made by Mr. Aziz were not voluntary, and under the total circumstances not a product of "uncoerced choice."

## Conclusion

For the reasons stated herein and in the defendant's Declaration and based upon the exhibits provided, the defendant's request for the suppression of physical evidence taken from the defendant and his automobile and the statements made as a result of his custodial interrogation should be granted or an evidentiary hearing should be held on the issues presented.

Dated: White Plains, New York
August 4, 2022

Respectfully submitted,

STEPHENS, BARONI, REILLY & LEWIS, LLP

By: _____
Stephen R. Lewis, Esq.
*Attorney for Jamaul Aziz*
175 Main Street, Suite 800
White Plains, New York 10601
914-683-5185
slewis@sbrllaw.com