UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X

UNITED STATES OF AMERICA      :

    -v-                                                   :
                                                        21 CR 113 (PMH)
JAMAUL AZIZ,                                   :

          Defendant.                    :
------------------------------------------------------X

## DEFENDANT JAMAUL AZIZ'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF HIS MOTION TO SUPPRESS

Defendant Jamaul Aziz submits this reply memorandum of law in further support of his motion to suppress all physical evidence taken from his person and his automobile on January 7, 2021, as well as any post-arrest statements made by him.

**I.    A Hearing is Needed to Determine the Legality of the Initial Car Stop and Search of Aziz**

Throughout its opposition (ECF 173), the government argues that the factual disputes raised in Aziz's moving papers are essentially "moot" because law enforcement had probable cause to arrest the defendant before the car was stopped. In support of this argument, the government claims that law enforcement planned to arrest the defendant irrespective of whether he was found with narcotics at the time he was stopped. In claiming that there was probable cause to stop Aziz, the government argues "[i]t is undisputed …that the FBI briefed local law enforcement, including Trooper Ranno, about their investigation." ECF 173 at 21 of 37. The government is wrong. Aziz does dispute the government's self-serving, unsupported statement that local law enforcement was briefed by federal authorities about four controlled buys allegedly made by a confidential informant on October 28, 2020, November 9, 2020, November 19, 2020, and December 10, 2020.

There is no evidence – either in the discovery or in a sworn affidavit submitted with the government's opposition – that local law enforcement was in fact briefed by the FBI. Defense counsel has not seen a single law enforcement report detailing any meetings or briefings between the FBI and local law enforcement, or any operational reports discussing the preparations and plan to arrest Aziz. In counsel's experience, if such a briefing took place, law enforcement reports would be generated documenting the alleged briefing by the FBI of the state troopers. Paperwork would have been generated by both the briefed state troopers and the briefing FBI agents. To date, defense counsel has not seen any such paperwork associated with this alleged pre-arrest briefing.

Thus, there is no corroboration indicating that the briefing(s) occurred, when the briefing(s) occurred and what actual details, if any, were shared by the FBI with local law enforcement. Without a hearing, this Court cannot determine whether the subject of the alleged briefing was the same person the state troopers stopped in the vehicle. Assuming <u>arguendo</u> the troopers were briefed, there is no evidence that the officers knew that the person they pulled over was the same person allegedly involved in the controlled buys. Contrary to the government's assertion, Aziz is contesting "that, between October 2020 and December 2020, the CI made four controlled purchases of fentanyl from the defendant." ECF 173 at 21 of 37. Without a hearing the Court does not know (i) whether the troopers were shown any pictures of Aziz and were able to make a positive identification between the picture and the person in the car, or (ii) whether the confidential informant identified the individual in the car as the person who engaged in the four buys. There has been nothing produced in discovery to support any identification of Aziz by the CI at the scene of the car stop.

The Government's theory of probable cause based on the four controlled buys by a confidential informant is missing a link in the chain to establish a connection between the car stop and the buys because the CI never identified Aziz at the scene of the stop as the person involved in the four buys. While the government's opposition states that the individual driving the vehicle provided a South Carolina license (ECF 173 at 8 of 37), it does not say what name was on the license. The government does not even claim the FBI definitively knew who was driving the car. The government's brief states that an agent observed the Kia depart "from the area of the Residence," (ECF at 7 of 37) but it is not alleged that the agent knew who was driving the car. Instead, the government relies on location data from the defendant's phone. Thus, even the FBI had not made a positive identification of who was traveling in the car. Further, the fact that there are no dash cam or body cam recordings of the car stop should provide this Court with pause concerning the government's claims about the circumstances of the stop. If the plan really was to arrest Aziz regardless of what was found on his person or in the car, the entire interaction necessarily would have been recorded by law enforcement to document and preserve the evidence.

Accordingly, a hearing is necessary because if it is established that the troopers were not briefed or were not briefed on sufficient information to enable them to positively identify the person in the car as same person involved in the four CI buys, then the questions of whether (i) Aziz was speeding or committed any moving violations; and (ii) the lawfulness of the search of the defendant's person and vehicle become critical factual issues for this Court to resolve in determining the legality of the search and seizure of Aziz and the Kia.

The government argues that the moving violations and suspended license provided probable cause for an arrest and subsequent search of Aziz. Aziz, however, contests that he

committed any moving violations which is a factual question for a hearing. The government has not submitted a sworn statement contesting Aziz's sworn affidavit that he was not speeding and did not commit any moving violations. Instead, the government states what the officer would "credibly testify" to. The government's unsworn proffered facts are insufficient to ground a finding that Aziz was speeding and unsafely changed lanes.

Moreover, Aziz contends that the warrantless search of his person violated his Constitutional rights. The cases relied upon by the government are inapposite and none involved a cavity search of the defendant's person on the side of the road. See Gustavson v. Florida, 414 U.S. 260, 262 (1973) (police patted down clothing of petitioner, "outside and inside, I checked the belt, the shirt pockets and all around the belt, completely around inside." Upon completing pat down, Lieutenant Smith placed his hand into the left front coat pocket of the coat petitioner was wearing. From that pocket he extracted … a Benson and Hedges cigarette box… opened the box and it appeared there were marihuana cigarettes in the box.); United States v. Robinson, 414 U.S. 218, 23 (1973) (During pat down, officer felt an object in the left breast pocket of the heavy coat respondent was wearing, reached into pocket and pulled out cigarette pack and found 14 gelatin capsules of white powder inside); United States v. Scopo, 19 F.3d 777, 780 (2d Cir. 1994) ("After Scopo alighted from his car as directed, he was frisked for weapons.").

Here, Aziz's affidavit (ECF 104 ¶7) states that when he exited his vehicle, he was bent over the hood of the trooper's car, his pants were pulled down and an officer put his finger in Aziz's anus. In its unsworn memorandum, the government proffers a version of events that strains credulity. The government claims that the trooper cupped his hands and while running them over different parts of Aziz's body, he felt an object that was "wedg[ed] … into [Aziz's] buttocks" and "was able to guide the object … down and out the bottom of defendant's pant leg."

ECF 173 at 26 of 37. It defies logic that the trooper was able to feel an object that was allegedly wedged into the defendant's buttocks by a pat down search and then was able to "guide the object…down and out the bottom of defendant's pant leg." At a hearing, testimony about the type of pants worn by Aziz at the time of the car stop could shed light on whether the trooper's version of events is plausible. If the search of Aziz's person was as claimed by the government, the Court could expect production of body cam and/or dash cam video to support the government's claims about the search which Aziz says was an intrusive, illegal, anal cavity search at the scene of the public car stop.

Further, the government relies on the smell of marijuana to support the warrantless search of the car's center console. ECF 173 at 30 of 37. However, the government does not allege that any occupant of the Kia was smoking marijuana at the time of the stop or that any recently put out marijuana cigarette or roach (the end of a smoked joint) was recovered by the troopers. Moreover, the government does not even allege that the 30.1 grams of marijuana recovered from the center console was found in anything other than a closed package. A closed package of marijuana logically would not provide the troopers with an opportunity to smell marijuana never mind smell a "strong odor of marijuana.[1]" Accordingly, the necessary probable cause to search the vehicle is missing without corroboration of this claim of a smell of marijuana. In any event, the initial stop of the vehicle was unlawful, any subsequent searches of Aziz's person and vehicle were in turn unlawful. Thus, all evidence seized as a result of the illegal car stop, including a substance containing a quantity of fentanyl analogue and an oxycodone pill recovered from the defendant's person and a quantity of marijuana recovered from the center console of the Kia,

---

[1] "found *foil bags* in the center console arm rest containing approximately 30.1 grams of marijuana" ECF 173 at 9 of 37. (emphasis supplied).

must be suppressed as fruit of the poisonous tree. Wong Sun v. United States, 371 U.S. 471 (1963).

## II. Aziz Did Not Knowingly and Voluntarily Waive His Miranda Rights and Clearly and Unequivocally Invoked His Right to Remain Silent

The government argues that the videotape contradicts Aziz's claim that law enforcement engaged in conduct intended to circumvent his right to remain silent. Aziz does not agree. The parties, however, do agree that, unlike for the arrest and search of Aziz, there is videotape of Aziz's post-arrest interrogation. The parties further agree that the issue cannot be in dispute because of the existence of the video. The video establishes that Aziz clearly and unequivocally invoked his right to remain silent.

Specifically, the video shows that after being read his Miranda warnings he was asked "having these rights in mind do you wish to speak to us now?". GX A-1 at 21:49:12. Before Aziz had a chance to respond, a second officer anticipating Aziz's unwillingness to speak to the police interjected and said to Aziz, "I'll lay it all out there." GX A-1 at 21:49:13. Then the first officer repeated the question again "having these rights in mind do you wish to speak to us now?" GX A-1 at 21:49:15. Aziz responded "I didn't want to speak, you said you speaking to me, I ain't want to speak to nobody." GX A-1 at 21:49:18. After Aziz made it clear he "aint want to speak to nobody" the first officer interrupted Aziz and indicated he understood Aziz was invoking his right to remain silent which is established by the officer's statement "OK. You can listen. That's fine." TS – 21:49:20.

Despite Aziz's invocation of his right to remain silent[2], the officers improperly continued to interrogate Aziz and ask him questions. "[O]nce Miranda rights have been invoked,

---

[2] In his affidavit (ECF 104 ¶14), Aziz swears "When they gave me my Miranda warnings, they asked me if I wished to speak to them and I told them, you said you're speaking to me, I don't want to speak to you. They said, that's fine you can listen." (internal quotations omitted)

interrogation must stop and the invocation must be 'scrupulously honored.'" United States v. Felton, 2018 WL 4462361, *4 (S.D.N.Y. Sept. 18, 2018) ("When asked if he would answer the detectives' questions on two separate occasions, Felton twice said no. That constitutes an invocation of his right to remain silent.") (quoting United States v. Gonzalez, 764 F.3d 159, 165 (2d Cir, 2014)). A waiver can only occur if the suspect "reinitiates communication." Gonzalez, 764 F.3d at 166. That is not what happened here. When Aziz said that he did not want to speak, the officers should have ended the interview. Instead, they unlawfully continued the interrogation, and posed additional questions to Aziz in violation of his invocation of his right to remain silent.

The government's reliance on United States v. Gomez, 2018 WL 501607 (S.D.N.Y. Jan. 19, 2018) is misplaced. In Gomez, unlike here, the defendant never uttered the words he "didn't want to speak." Instead, the Court found that

> The videotape makes plain that an agent read Gomez his Miranda rights; that Gomez indicated his understanding of those rights; and that Gomez agreed to answer the agents' questions. No more is required. Gomez's statement, when asked if he would answer some questions, that he was "mute," is similarly irrelevant. Gomez weakly suggests that the statement shows he actually tried to assert his right to remain silent on being read his Miranda rights, but, in context, it is better understood to mean that he had nothing to say until the agents explained why he had been arrested. It certainly was not the unambiguous affirmative ... statement of his right to remain silent that is necessary to invoke Miranda.

Id. at *2 (citations and internal quotations omitted). Here Aziz, unlike in Gomez where the Court found that the defendant did not invoke his right to remain silent by remaining "mute", the video tape shows that Aziz clearly and unequivocally said that he did not wish to speak to the interrogating officers with the words "I aint want to speak to nobody". While this locution may not qualify as the King's English, it certainly does make clear that Aziz was asserting his right to

7

remain silent, in contrast to the mute Gomez who made no affirmative clear unequivocal statement. There is nothing unclear or equivocal about Aziz telling the officers "I aint want to speak to nobody."

Accordingly, the Court must grant the defendant's motion to suppress his post-arrest statements as taken in violation of Aziz's Fifth Amendment rights against self-incrimination, and as fruits of the illegal car stop, illegal search of Aziz's person and illegal search of the Kia in violation of Aziz's Fourth Amendment rights.

## CONCLUSION

For all of the foregoing reasons, as well as the arguments presented in the defendant's initial filings (ECF 103-106), Aziz requests that the Court grant the relief requested in his Motion to Suppress.

Dated: Scarsdale, New York
August 6, 2023

_____
Law Offices of
Daniel A. Hochheiser
Attorney At Law
2 Overhill Road, Suite 400
Scarsdale, New York 10583
(646) 863-4246

*Attorney for Defendant Jamaul Aziz*